# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

## BEAUFORT DIVISION

| | |
|---|---|
| VIRGINIA LOUIS, <br> AS ADMINISTRATOR <br> OF THE ESTATE OF JOAN HAYDEN, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL RAILROAD <br> PASSENGER CORPORATION, <br> d/b/a AMTRAK, a foreign corporation, <br><br> Defendant. | Civil Action No. 9:21-cv-1087-MBS <br><br><br><br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiff Virginia Louis, as Administrator of the Estate of Joan Hayden, by and through her undersigned counsel, complaining of Defendant National Railroad Passenger Corporation, d/b/a Amtrak alleges and states as follows:

## PARTIES

1. Plaintiff Virginia Louis, as Administrator of the Estate of Joan Hayden, is a citizen and resident of Florida. A copy of Ms. Louis's appointment as Administrator of the Estate of Joan Hayden is attached hereto as Exhibit 1.

2. At all times relevant, the Plaintiff's decedent, Joan Hayden, was a citizen and resident of New Jersey. Ms. Hayden was a properly ticketed passenger on Amtrak train No. 98 on April 14, 2018.

3. Defendant National Railroad Passenger Corporation, d/b/a Amtrak (hereinafter "Amtrak") is a corporation organized and existing under the laws of the United States of America with its principal place of business located at 60 Massachusetts Avenue, Washington,

District of Columbia. Pursuant to 49 U.S.C.§ 24301(b) Amtrak may be served with process by certified mail to its headquarters in Washington, D.C.

4. At all times relevant, Defendant Amtrak was a for-profit railroad company owned and operated as a common carrier engaged in interstate commerce which was doing business in the State of South Carolina.

5. At all times relevant herein, Amtrak owned and operated train No. 98, that departed Orlando, Florida to Philadelphia, Pennsylvania on April 14, 2018.

6. At all times relevant hereto, all employees of Amtrak were acting in their individual capacity and also as agents of Amtrak, within the scope of their employment and authority, and in the furtherance of the business of Amtrak. All the acts and omissions of the employees of Amtrak are imputed to their employer, who is liable for such acts and omissions.

## JURISDICITON AND VENUE

7. This action involves a state law negligence claim as well as federal claims for discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973, pursuant to 42 U.S.C. § 12133, 29 U.S.C. § 794a(a)(2) and other statutory provisions.

8. This Court has jurisdiction over this case under: (a) 28 U.S.C. § 1331, as Defendant Amtrak is an entity incorporated by the United States Congress; and (b) 28 U.S.C. § 1332, which grants this court original jurisdiction where, as here, the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states; and (c) 28 U.S.C. § 1343(a)(4), which grants original jurisdiction in any civil action to redress or secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

9. Venue is proper in the United States District Court for the District of South Carolina under 28 U.S.C. § 1391 because:

  a. As set forth herein, the events or omissions giving rise to this action occurred in the District of South Carolina within the meaning of 28 U.S.C. § 1391(b)(2);

  b. Defendant Amtrak resides in the District of South Carolina within the meaning of 28 U.S.C. § 1391(c)(2); and

  c. Defendant Amtrak is subject to the Court's personal jurisdiction with respect to this action.

10. Venue is proper in this division under Local Civil Rule 3.01(A)(1) as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within Beaufort, Jasper, and/or Hampton Counties, and Defendant Amtrak does business related to the events and omissions alleged herein within the Beaufort Division of the United States District Court for the District of South Carolina.

11. Trial by jury is demanded pursuant to Federal Rule of Civil Procedure 38.

## FACTUAL BACKGROUND

12. On April 14, 2018, the Decedent, Joan Hayden ("Ms. Hayden"), was a passenger on Amtrak train No. 98 traveling from Orlando, Florida to Philadelphia, Pennsylvania.

13. At the time, Ms. Hayden was 82 years of age and suffered from memory impairments and cardiac health issues.

14. Due to her disabilities, Ms. Hayden's train ticket identified her as a "disabled" passenger.

15. Before Amtrak train No. 98 departed Orlando, Ms. Hayden's daughter, Virginia Louis, told Amtrak personnel of her mother's disabilities and was given permission to board the train so she could assist her mother with her baggage and help her get settled in her handicap seat.

16. While on board the train and prior to its departure, Ms. Louis spoke with the train car conductor responsible for Ms. Hayden's coach and explained to her that her mother suffered from various medical issues and requested that the conductor provide her with assistance and otherwise "keep an eye on her" during the train trip.

17. The train car conductor agreed with each of these requests.

18. Ms. Louis then handed the train car conductor two envelopes: the first contained a letter addressed to the conductor and stated in writing that Ms. Hayden suffered from memory issues and physical disabilities. The letter asked the conductor to ensure Ms. Hayden remained safe during the train trip and provided Ms. Louis's contact information in case of emergency. The envelope given to the conductor included a cash tip.

19. The second letter was generically addressed to a Red Cap porter in Philadelphia and requested assistance in helping Ms. Hayden disembark the train and to provide wheelchair service to her at the station. The letter to the Red Cap porter also included a cash tip. Ms. Louis asked the Amtrak train car conductor she spoke with to give this letter and tip to a Red Cap porter when the train arrived at Philadelphia's 30th Street Station.

20. The train departed Orlando with Ms. Hayden on board at approximately 1:35 p.m.

21. Later that evening, minutes before the train approached its stop in Yemassee, South Carolina, the train suddenly and rapidly decelerated and then immediately accelerated, causing the train to lurch and jolt violently and without warning.

22. Ms. Hayden was standing in the café car when the train violently lurched and jolted, causing Ms. Hayden to fall hard to the floor.

23. Upon information and belief, the sudden braking and deceleration and immediate acceleration were caused by deliberate inputs to the train's controls by the Amtrak locomotive engineer.

24. Upon information and belief, there were no announcements made by any Amtrak personnel prior to the train's sudden braking and acceleration.

25. Upon information and belief, the were no announcements made by any Amtrak personnel altering passengers that the train was approaching its stop at Yemassee, South Carolina.

26. Upon information and belief, the violent and unexpected lurch of the train disrupted other passengers and items on the train.

27. There were insufficient or no handrails or other safety devices present in the café car that Ms. Hayden was injured in that would have permitted her to steady herself when the train lurched violently to prevent her from falling to the ground.

28. When Ms. Hayden fell to the ground, she fractured her hip and suffered in extreme pain.

29. Upon information and belief, no Amtrak staff, including any staffed in the café car, came to Ms. Hayden's side to render aid to her.

30. Upon information and belief, the only Amtrak employee working in the café car was a bartender who took no action to assist Ms. Hayden after she fell to the floor.

31. Instead, other train passengers rushed to Ms. Hayden's side to help her.

32. One passenger immediately called Ms. Louis to inform her what had happened to her mother.

33. Shortly afterwards, another passenger gave another train conductor a cell phone to call Ms. Louis. During the call, the conductor asked Ms. Louis what they should do with her mother.

34. Upon information and belief, another passenger nearby with medical training stated that Ms. Hayden needed to be taken to the hospital.

35. Ms. Louis instructed the conductor who called to have her mother taken to a hospital emergency room when the train stopped in Charleston, South Carolina.

36. Upon information and belief, two Amtrak employees then picked up Ms. Hayden from the floor and moved her to a seat without regard for her broken hip.

37. As the train neared the Charleston, South Carolina station, a call was placed to 911 and an ambulance arrived at the station to transport Ms. Hayden to the hospital.

38. While in the emergency room, Ms. Hayden was diagnosed with a left femoral neck fracture of her hip.

39. Ms. Hayden remained in medical facilities for treatment and convalescence of her injuries from the train until she passed away in April 2019.

40. Upon information and belief, the train car conductor who spoke with Ms. Louis prior the train departing from Orlando was off-duty and sleeping in her bunk at the time Ms. Hayden fell.

41. Upon information and belief, the train car conductor who spoke with Ms. Louis prior the train departing from Orlando did not inform the evening conductor responsible for Ms. Hayden's coach of her disabilities and medical condition, the need to watch her, the need to provide her with assistance during the trip, or the need to ensure she remained safe during the trip.

## FIRST CAUSE OF ACTION
**(Negligence and Gross Negligence)**

42. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

43. At all times relevant, Defendant Amtrak was a common carrier and owed passengers on the Amtrak Train, including Decedent Joan Hayden, the highest duty of care.

44. At all times relevant, Defendant Amtrak owed a duty to passengers traveling on the Amtrak Train, including the Plaintiffs, to comply with the Federal standards of care established by regulations or orders issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. Section 20106.

45. At all times relevant, Defendant Amtrak owed a duty to passengers traveling on the Amtrak Train, including Ms. Hayden, to comply with its own plans, rules, or standards that it created pursuant to a regulation or order issued by either of the Secretaries.

46. At all times relevant, Defendant Amtrak owed a duty to passengers traveling along its tracks, including Ms. Hayden, to comply with State laws, regulations, and orders that are not incompatible with subsection (a)(2) of 49 U.S.C. Section 20106.

47. At all times relevant, Amtrak, its agents, servants and/or employees had a duty to Ms. Hayden to keep, maintain, manage and operate the aforesaid train in a safe and proper manner, and to operate the train in a safe and proper speed relevant to the conditions there and then present.

48. At all times relevant, Defendant Amtrak owed a duty to Ms. Hayden to manage and supervise its railroad operations in a safe manner.

49. Amtrak's duty of care extends to the maintenance, servicing and inspection of its equipment and railroads to provide safe, suitable and efficient vehicles for the conveyance of passengers.

50. Amtrak owed a heightened duty of care to Ms. Hayden based on its actual knowledge that Ms. Hayden was affected by a physical impairment or disability which increased the hazards of her travel, and also based on Ms. Hayden's request for special assistance during the train trip.

51. At all times relevant, Defendant Amtrak had a duty to use the degree of care and caution of a reasonably prudent person under same or similar circumstances to prevent the risk of injury to train passengers, including Ms. Hayden.

52. Amtrak breached its duties of care owed to Ms. Hayden and was negligent, grossly negligent, reckless, careless, willful, wanton, and otherwise acted with a conscious, flagrant indifference to the rights or safety of its passengers in the following particulars, each of which was a direct, foreseeable and proximate cause of Ms. Hayden's injuries:

   a. Failing to exercise the highest duty of care, which it owed as a common carrier, to avoid injuring its passengers, including Ms. Hayden;

   b. Failing to comply with the Federal standards of care established by regulations or orders issued by the Secretary of Transportation or its designee (with respect to railroad safety matters), or the Secretary of Homeland Security or its designee (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. Section 20106;

   c. Failing to comply with its own plans, rules, or standards created pursuant to a regulation or order issued by either of the Secretaries;

d. Failing to comply with State laws, regulations, and orders that are not incompatible with subsection (a)(2) of 49 U.S.C. Section 20106;

e. Failing to exercise reasonable care to avoid injuring its passengers, including Ms. Hayden;

f. Failing to operate the train at a safe speed;

g. Failing to decelerate the train in a safe manner;

h. Failure to accelerate the train in a safe manner immediately after decelerating the train in an unsafe manner;

i. Deliberately causing the train cars to lurch violently;

j. Failing to warn passengers, including Ms. Hayden, of the sudden deceleration and/or sudden acceleration;

k. Failing to install sufficient stanchions and handrails or other safety devices in the café car sufficient to provide disabled passengers with safe on-board circulation, seating and standing assistance to prevent injury due to sudden train movements;

l. Failing to ensure floor surfaces of train cars where disabled passengers are to be accommodated are slip resistant;

m. Failing to monitor the safety of a known disabled passenger;

n. Failing to provide proper assistance and medical attention to Ms. Hayden after she fell and broke her hip;

o. Failing to use proper care in moving Ms. Hayden after her hip was fractured;

p. Failing to use any special indicator that Ms. Hayden needed assistance while circulating onboard the train prior to her fall;

q. Failing to manage and supervise its railroad operations in a safe manner; and

    r.  Such other and further particulars as the evidence at trial may show.

53.    As a direct and proximate cause of the negligence, gross negligence, recklessness, willfulness and wantonness of Defendant Amtrak, its agents, servants and/or employees, Ms. Hayden fell to the floor and suffered, among other injuries, a fractured left hip, which caused and continued to cause her to suffer one or more of the following elements of damage:

    a.  Serious physical injuries;

    b.  Physical pain and suffering;

    c.  Disfigurement, inconvenience, and loss of time;

    d.  Medical expenses;

    e.  Expenses for transportation to and from medical services;

    f.  Mental anguish and severe emotional distress;

    g.  Flashbacks of falling on the train;

    h.  Loss of enjoyment of life;

    i.  Shock and injury to her nerves and nervous system;

    j.  Permanent impairment; and

    k.  Such other and further particulars as the evidence at trial may show.

**FOR A SECOND CAUSE OF ACTION**
**(Violation of Title II of the Americans With Disabilities Act**
**and Section 504 of the Rehabilitation Act of 1973)**

54.    Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

55.    Amtrak is a public entity subject to Title II of the Americans with Disabilities Act ("ADA") and its implementing regulations.  42 U.S.C. § 12131(1)(C); 28 C.F.R. § 35.104.

56.    Amtrak is a public entity subject to Section 504 of the Rehabilitation Act.

57. The ADA defines an individual disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102 (1)(A). The Rehabilitation Act similarly defines an individual disability.

58. At the time of the incident giving rise to this Complaint, Ms. Hayden suffered from physical and mental impairments that substantially limited various aspects of her mobility and ability to perform major life activities and was otherwise disabled.

59. At all times relevant, Ms. Hayden was a qualified individual with disabilities as defined by Title II of the ADA and Section 504 of the Rehabilitation Act.

60. At all times relevant, Defendant Amtrak owed a duty to passengers traveling on the Amtrak Train No. 98, including Ms. Hayden, to comply with federal standards promulgated under the ADA and Department of Transportation regulations and agency statements implementing the ADA for intercity railcar service.

61. Title II forbids a public entity like Amtrak from discrimination against individuals on the basis of disability and prohibits such entities from excluding individuals with disabilities "from participation in or . . . the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132.

62. Title II thus requires public entities like Amtrak to make reasonable modifications to fully accommodate individuals with disabilities, so disabled individuals receive service that is equivalent to the service provided to nondisabled persons.

63. Amtrak was at all times relevant required by the ADA and Department of Transportation regulations and guidelines to ensure its rail car handrails and stanchions were sufficient to permit safe on-board circulation and seating and standing assistance by persons with disabilities, such as Ms. Hayden.

64. On information and belief, the stanchions and handrails in the café car in which Ms. Hayden suffered her injuries were not sufficient under law to permit safe on-board circulation or seating or standing assistance to individuals with disabilities, including Ms. Hayden.

65. Amtrak was at all times relevant required by the ADA and Department of Transportation regulations and guidelines to ensure that floor surfaces of train cars where disabled passengers such as Ms. Hayden are to be accommodated are slip resistant.

66. On information and belief, the floor of the café car in which Ms. Hayden suffered her injuries was not sufficiently slip resistant as required by law to fully accommodate individuals with disabilities, including Ms. Hayden.

67. Because of Ms. Hayden's impairments due to her disability, Ms. Louis specifically notified the train conductor of Ms. Hayden's disability, her limitations, and the need to provide assistance to Ms. Hayden as needed throughout the train trip.

68. On information and belief, neither the train car conductor responsible for Ms. Hayden's coach and who was notified of her disability and need for assistance, nor any other agent, servant, or employee of Defendant Amtrak, provided the necessary assistance to Ms. Hayden during her trip, including while she was in the café car.

69. After Ms. Hayden fell and broke her hip, no Amtrak employee, agent or servant came to her aid or attempted to assist her without the prodding of Ms. Hayden's fellow passengers.

70. Upon information and belief, Ms. Hayden was deprived of necessary assistance and related services on account of her disability.

71. Amtrak's denial of necessary assistance and failure to provide necessary modifications to fully accommodate disabled individuals like Ms. Hayden constitutes discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act.

72. As a result of Amtrak's discriminatory conduct in violation of the ADA and Rehabilitation Act, Plaintiff seeks compensatory damages, appropriate injunctive relief to enjoin Amtrak to comply with its obligations under the ADA and Rehabilitation Act, damages for the violations of the decedent's rights, and attorneys' fees, including litigation expenses and costs pursuant to 42 U.S.C. § 12205, 29 U.S.C.A. § 794a(b).

**WHEREFORE,** Plaintiff prays for judgment against Defendant Amtrak in an amount to be determined at the trial of this case, for actual damages, statutory remedies and penalties, injunctive relief, as well as for punitive damages on her negligence cause of action in an amount sufficient to keep such wrongful conduct from being repeated, attorneys' fees and costs, and all such further relief as the Court deems reasonable and just.

Respectfully submitted,

McLEOD LAW GROUP, LLC
Post Office Box 21624
Charleston, South Carolina 29413
(843) 277-6655

*s/ Colin V. Ram*
Colin V. Ram (D.S.C. No. 12958)
W. Mullins McLeod, Jr. (D.S.C. No. 7142)
colin@mcleod-lawgroup.com

***ATTORNEYS FOR PLAINTIFF***

April 13, 2021
Charleston, South Carolina